1  Daniel T. Pascucci (SBN 166780)
   dtpascucci@mintz.com
2  Heather J. Silver (SBN 285509)
   hjsilver@mintz.com
3  MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
   3580 Carmel Mountain Road, Suite 300
4  San Diego, CA 92130
   Telephone:   (858) 314-1500
5  Facsimile:   (858) 314-1501

6  Attorneys for Defendants
   PDOX, INC., dba CERTIS ONCOLOGY SOLUTIONS
7  and PETER ELLMAN

8              UNITED STATES DISTRICT COURT

9             SOUTHERN DISTRICT OF CALIFORNIA

10

11  ANTICANCER, INC.,                         Case No. 18-cv-1543-CAB-MDD

12              Plaintiff,                     **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

13         v.

14  PDOX, INC., dba CERTIS ONCOLOGY
    SOLUTIONS, a Delaware corporation;         **[Fed. R. Civ. Proc. 12(b)(1) and 12(b)(6)]**
15  PETER ELLMAN, an Individual; and
    DOES 1-10,
16                                             PER CHAMBERS RULES, NO ORAL
                Defendants.                    ARGUMENT UNLESS SEPARATELY
17                                             ORDERED BY THE COURT
18
                                              Date:        September 19, 2018
19
                                              The Hon. Cathy Ann Bencivengo
20                                            Courtroom 4C (4th Floor – Schwartz)

21                                            Magistrate Judge Mitchell D. Dembin
                                              11th Floor (Carter/Keep)
22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ..................................................................................1

II.    BACKGROUND ...................................................................................2

     A.    Plaintiff's PDOX Trademark ......................................................2

     B.    Plaintiff Agrees to Found Certis to Commercialize PDOX ..................3

     C.    Plaintiff Helps Certis Commercialize PDOX ........................................3

     D.    Defendants Allegedly Decide to Shunt Plaintiff to the Side ...............4

     E.    Certis Terminates the Services Agreement and Plaintiff Sues in Retaliation ...........................................................................................5

III.   LEGAL STANDARD ............................................................................5

IV.   ARGUMENT........................................................................................7

     A.    Plaintiff's Trademark Infringement and False Designation Claims Are Barred by the License Appearing on the Face of the Complaint ..................................................................................................7

     B.    Plaintiff's State Law Tort and Quasi-Contract Claims Are Superseded by California's Uniform Trade Secrets Act ...................11

          1.    Plaintiff Cannot Assert a Viable Misappropriation of Trade Secrets Claim under CUTSA .........................................12

          2.    Plaintiff's Attempts to Circumvent CUTSA Are Superseded and Invalid................................................................13

               a.    Plaintiff's Conversion Claim Is Superseded by CUTSA ....................................................................................15

               b.    Plaintiff's Fraud and Deceit Claim Is Superseded by CUTSA ....................................................................17

               c.    Plaintiff's Quasi-Contract Claims for Unjust Enrichment and Quantum Meruit Are Superseded by CUTSA ....................................................................18

     C.    Plaintiff's Fraud Claim Fails To Meet the Pleading Requirements of Rule 9(b) or Rule 8 ................................................19

Case No. 18-cv-1543-CAB-MDD

D.  The Services Agreement Attached To and Incorporated by Reference In the Complaint Precludes Plaintiff's Conversion Claim .................................................................................21

E.  The Services Agreement Precludes Plaintiff's Claims for Unjust Enrichment and Quantum Meruit ........................................................22

V.  CONCLUSION ...........................................................................................24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

ii

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*,
  819 F. Supp. 2d 1001 (E.D. Cal. 2011) ................................................................. 13

*Ashcroft v. Iqbal*,
  129 S. Ct. 1937 (2009) .......................................................................... 6, 15

*Be In, Inc. v. Google Inc.*,
  2013 U.S. Dist. LEXIS 147047 (N.D. Cal. Oct. 9, 2013) ...................................... 13

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ................................................................................. 6

*Bijan Nikoopour v. Ocwen Loan Serv., LLC*,
  2018 U.S. Dist. LEXIS 100828 (S.D. Cal. June 28, 2018) ..................................... 22

*Crafty Prods. v. Fuqing Sanxing Crafts Co.*,
  2016 U.S. Dist. LEXIS 136219 (S.D. Cal. Sept. 29, 2016) .................................... 22

*De Forest Radio Tel. Co. v. United States*,
  273 U.S. 236 (1927) .......................................................................... 7, 8, 9

*Delacruz v. State Bar of Cal.*,
  2015 U.S. Dist. LEXIS 133465 (N.D. Cal. Sept. 29, 2015) ............................... 6, 11

*Delino v. Platinum Cmty. Bank*,
  628 F. Supp. 2d 1226 (S.D. Cal. 2009) ...................................................... 19

*Digital Envoy, Inc. v. Google*,
  370 F. Supp. 2d 1025 (N.D. Cal. 2005) ..................................................... 19

*E. & J. Gallo Winery v. Gallo Cattle Co.*,
  967 F.2d 1280 (9th Cir. 1992) ............................................................... 7

*Effects Assocs. v. Cohen*,
  908 F.2d 555 (9th Cir. 2002) ................................................................ 9

*FreecycleSunnyvale v. Freecycle Network*,
  626 F.3d 509 (9th Cir. 2010) .............................................................. 10

*Hansen v. Scram of Cal., Inc.*,
　　2017 U.S. Dist. LEXIS 65341 (C.D. Cal. Apr. 28, 2017)....................................19

*Hedging Concepts, Inc. v. First Alliance Mortg. Co.*,
　　41 Cal. App. 4th 1410 (1996)....................................................................23

*in Kwikset Corp. v. Superior Court*,
　　51 Cal. 4th 310 (2011)..............................................................................14

*Jamison v. Bank of Am.*,
　　194 F. Supp. 3d 1022 (E.D. Cal. 2016) ........................................................6

*Jogani v. Superior Court*,
　　165 Cal. App. 4th 901 (2008)....................................................................22

*Julian Bakery, Inc. v. Healthsource Int'l, Inc.*,
　　2018 U.S. Dist. LEXIS 52248 (S.D. Cal. Mar. 28, 2018)..............................20

*K.C. Multimedia, Inc. v. Bank of Am. Tech. & Operations, Inc.*,
　　171 Cal. App. 4th 939 (2009)....................................................................13

*Kearns v. Ford Motor Co.*,
　　567 F.3d 1120 (9th Cir. 2009) ..................................................................20

*Lance Camper Mfg. Corp. v. Republic Indem. Co.*,
　　44 Cal. App. 4th 194 (1996)......................................................................23

*Lazar v. Superior Court*,
　　12 Cal. 4th 631 (1996) ........................................................................20, 21

*Louis v. Nailtiques Cosmetic Corp.*,
　　423 Fed. Appx. 711 (9th Cir. Mar. 22, 2011)..............................................19

*Maksoud v. Guelton*,
　　2017 U.S. Dist. LEXIS 89213 (S.D. Cal. June 9, 2017) ................................20

*Miller v. Glenn Miller Prods.*,
　　318 F. Supp. 2d 923 (C.D. Cal. 2004) ........................................................10

*Olson v. Wells Fargo Bank, N.A.*,
　　961 F. Supp. 2d 1149 (C.D. Cal. 2013) ......................................................11

*Paracor Fin., Inc. v. GE Capital Corp.*,
　　96 F.3d 1151 (9th Cir. 1996) ....................................................................23

*Pogrebnoy v. Russian Newspaper Distribution, Inc.*,
   289 F. Supp. 3d 1061 (C.D. Cal. 2017) ..............................................................8, 9

*Puri v. Khalsa*,
   674 F. App'x 679 (9th Cir. Jan. 6, 2017) .............................................................20

*Pushkin v. Nussbaum*,
   2018 U.S. Dist. LEXIS 9368 (D.N.J. Jan. 19, 2018)...........................................20

*Reddy v. Litton Indus.*,
   912 F.2d 291 (9th Cir. 1990) ..........................................................................10, 13

*Rodriguez v. Sony Computer Entm't Am., LLC*,
   801 F.3d 1045 (9th Cir. 2015) .............................................................................13

*Sanders v. Kennedy*,
   794 F.2d 478 (9th Cir. 1986) .................................................................................6

*Silvaco Data Sys. v. Intel Corp.*,
   184 Cal. App. 4th 210 (2010) ..........................................................................14, 15

*Smith v. Aurora Loan Servs.*,
   2010 U.S. Dist. LEXIS 92687 ..............................................................................23

*SOAProjects, Inc. v. SCM Microsystems, Inc.*,
   2010 U.S. Dist. LEXIS 133596 (N.D. Cal. Dec. 7, 2010) ....................................19

*Sunpower Corp. v. SolarCity Corp.*,
   2012 U.S. Dist. LEXIS 176284 (N.D. Cal. Dec. 11, 2012) .............................14, 15

*Swarmify, Inc. v. Cloudfare, Inc.*,
   2018 U.S. Dist. LEXIS 57035 (N.D. Cal. Apr. 3, 2018)........................................18

*Thomas & Betts Corp. v. Panduit Corp.*,
   108 F. Supp. 2d 968 (N.D. Ill. 2000).....................................................................16

*Thompson v. McCombe*,
   99 F.3d 352 (9th Cir. 1996) ...................................................................................5

*TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*,
   2016 U.S. Dist. LEXIS 182652 (C.D. Cal. Jan. 29, 2016).............................14, 16

*Top Agent Network, Inc. v. Zillow, Inc.*,
   2015 U.S. Dist. LEXIS 176837 (N.D. Cal. Aug. 6, 2015).................................17, 18

*Triton Eng'g v. Crane Co.*,
  2013 U.S. Dist. LEXIS 198210 (C.D. Cal. Apr. 25, 2013) ............................. 16, 18

*Vess v. Ciba-Geigy Corp. USA*,
  317 F.3d 1097 (9th Cir. 2003) ........................................................................... 6, 19

*Wolfe v. Strankman*,
  392 F.3d 358 (9th Cir. 2004) ................................................................................... 5

## Statutes

28 U.S.C. § 1332(c)(1) ................................................................................................ 11

28 U.S.C. § 1367(a) ..................................................................................................... 5

Cal. Civ. Code § 3426.1 ............................................................................................ 12

Cal. Civ. Code § 3426.1(a) ................................................................................. 14, 17

Cal. Civ. Code §§ 3426.1(a), 3426(b)(1) .............................................................. 13

Cal. Civ. Code § 3426.7(b) ...................................................................................... 14

California's Uniform Trade Secrets Act ............................................................ *passim*

Illinois' Uniform Trade Secrets Act ......................................................................... 16

## Other Authorities

Federal Rule of Civil Procedure 8 ................................................................. 6, 19, 20

Federal Rule of Civil Procedure 9(b) ........................................................... 6, 19, 20

Federal Rule of Civil Procedure 12(b)(1) .................................................................. 5

Federal Rule of Civil Procedure 12(b)(6) .................................................................. 6

Case No. 18-cv-1543-CAB-MDD

# I.    INTRODUCTION

Upset that it squandered its only concrete path to rectify the dire financial straits that Plaintiff Anticancer, Inc. ("Plaintiff") put itself in, Plaintiff filed the instant complaint trying to push the blame for its own failures under its written agreement with Defendant PDOX, Inc., dba Certis Oncology Solutions ("Certis") onto Certis and its CEO, Defendant Peter Ellman ("Ellman," and collectively with Certis, "Defendants"). Although for purposes of this motion, Defendants do not challenge Plaintiff's factual allegations, Plaintiff conjures up a $112,500 breach of contract claim by ignoring its own complete failure to perform under the agreement. More pertinent to this motion is that, unsatisfied with the leverage of a factually-flawed and modest-exposure state court contract claim, Plaintiff attempts to spin it into a federal case of trademark infringement, conversion, fraud, and breach of implied contracts, in a gravely-flawed attempt to state a claim for more than $25 million. As detailed below, this effort fails because Plaintiff admits facts fatal to each of these claims.

Plaintiff owns the PDOX trademark, which it uses to brand a research method in which samples from cancerous tumors are implanted in mice. But Plaintiff's accusation that Certis is somehow infringing this trademark is flatly contradicted by Plaintiff also pleading that it granted Certis a license to use the PDOX mark. Specifically, Plaintiff admits that it was one of the founders of Certis, which was formally incorporated as PDOX, Inc. Plaintiff further admits it participated in founding Certis for the express purpose of commercializing the PDOX research method and, inherently, the PDOX mark. Plaintiff became (and remains) the largest shareholder of Certis, and attaches a Services Agreement to the complaint demonstrating that it actively participated in Certis's supposedly infringing activities. Plaintiff's consent and participation in the use of the PDOX mark pleads a license on

the face of the complaint that amounts to a complete defense for infringement under binding Supreme Court precedent.

Plaintiff's remaining claims are equally infirm. Plaintiff apparently recognizes it cannot meet the high bar to state a claim for misappropriation of trade secrets. So Plaintiff instead asserts related theories that Defendants employed an ill-defined fraudulent scheme to convince Plaintiff to turn over valuable information about the PDOX method. However, even if true, these claims fall squarely within the ambit of California's Uniform Trade Secrets Act, which supersedes any and all causes of action asserting information of value was misappropriated by fraudulent means. Moreover, Plaintiff's fraud claim is implausible and is undermined by admitted facts irreversibly confirming that the alleged reliance (sharing of information) happened eleven months *before* Defendants even allegedly conceived of the scheme to defraud Plaintiff. Worse yet, Plaintiff pleads—and the Services Agreement confirms—that Plaintiff voluntarily agreed to give Certis the very information Plaintiff now complains Certis had no rights to use.

Separately, Plaintiff cannot recover in quasi-contract for the reasonable value of the same services whose payment terms are explicitly governed by the parties' written agreement.

Because Plaintiff's trademark claims are the only basis for federal jurisdiction, the Court can and should dismiss the entire complaint. And because a plaintiff cannot amend its complaint to contradict its prior pleadings, Plaintiff's pleading of facts fatal to its claims dictates that granting leave to amend would be futile.

## II. BACKGROUND

### A. Plaintiff's PDOX Trademark

In 1996, Plaintiff alleges that it patented a method "for studying cancer's response to various anti-cancer treatments, using a tumor fragment excised from a patient and … grafted … onto the … corresponding organ" of a mouse, upon which

Case No. 18-cv-1543-CAB-MDD

mouse various chemotherapy treatments can then be tested. Complaint, Dkt. No.1 ("Compl.") ¶¶ N, O. [1] The "technical way" to describe this method is "Patient Derived Orthotopic Xenograft," but Plaintiff brands the method "PDOX." *Id.* ¶ N. Plaintiff alleges that it registered the "PDOX" mark in 2014. *Id.* ¶ M, Ex. 1.

### B.  Plaintiff Agrees to Found Certis to Commercialize PDOX

In the fall of 2015, Plaintiff alleges it was in "dire financial straits," when its CEO met a surgical oncologist at UCLA who had learned of the PDOX technology through his involvement with a patient who was a family member of Certis' now-chairman. *Id.* ¶¶ H, I. Plaintiff agreed with the two to "create a new company to commercialize the [PDOX] method" in the hopes that the venture "would help [Plaintiff] turn around its financial situation in a big way." *Id.* ¶¶ J, I. As a founding shareholder, Plaintiff was given "forty percent of the newly formed company, PDOX, Inc." *Id.* ¶¶ L, S. PDOX, Inc. does business as Certis and Plaintiff remains the largest shareholder today. *Id.*

### C.  Plaintiff Helps Certis Commercialize PDOX

In January 2017, Plaintiff and Certis signed a Services Agreement, in which Plaintiff agreed to use the PDOX method to perform testing and create a tumor bank of the patients' tumors for Certis's benefit (the "Services Agreement"). Compl. Ex. 3 at 1, Ex. A. In the Services Agreement, Plaintiff agreed that all "Deliverables," including "all materials, data, work product, results, reports and any other information generated or derived by [Plaintiff] in connection with [its] performance" under the Services Agreement "shall be deemed 'works for hire' and shall be the sole and exclusive property" of Certis. Compl. Ex. 3 §§ 6.1, 6.2. Plaintiff "expressly assign[ed] to [Certis] all of its right, title and interest, including copyrights, patents,

---

[1] The first four and a half pages of Plaintiff's complaint is titled an "Introduction" and is written in prose without paragraph numbers for ready identification of allegations. For convenience, Defendants attach Exhibit 1 to the concurrently filed declaration of Heather J. Silver, which is a copy of the complaint that makes no alteration other than to label each paragraph in this "Introduction" with a letter for ease of reference.

and any other intellectual, industrial or proprietary property rights in all aspects of such Deliverables, including any derivative works." *Id.* § 6.2. While Plaintiff included a reservation that its services might involve the use certain other unidentified proprietary information, the rights of which Plaintiff did not intend to "abandon[] or surrender[]," Plaintiff also agreed to grant a "non-exclusive, worldwide, perpetual, royalty free license to use" such proprietary information if contained in the Deliverables. *Id.* § 6.3. In exchange for Plaintiff's services, Plaintiff was to be paid a monthly fee. Compl. Ex. 3 at Ex. A.

### D. Defendants Allegedly Decide to Shunt Plaintiff to the Side

Plaintiff alleges that "it wasn't until December 2017,"—more than a year after Plaintiff agreed to create a new business entity to commercialize the PDOX method and nearly a year after Plaintiff signed the Services Agreement—"that [Defendants] realized just how extremely valuable the tumor bank was." Compl. ¶ R. Plaintiff alleges that a competitor in the tumor bank business was sold for $400 million at that time, and upon "[s]eeing this huge sale," Defendants "decided that they were better off shunting [Plaintiff] to the side," and thus "decided to take the tumor bank and leave [Plaintiff] high and dry." *Id.*

Thereafter, Plaintiff alleges that, "one Sunday morning" in February 2018, Certis' CEO, defendant Peter Ellman, came to the laboratory where Plaintiff was performing its services for Certis under the Services Agreement. *Id.* ¶ B, R. Plaintiff does not allege there was anything improper about Ellman being there. Indeed, the Services Agreement expressly allocates the space (called the "PDOX Space" in the agreement) to Certis "for its primary use." Compl. Ex. 3 § 3. Ellman supposedly told the only employee there that Ellman was there with "a few custodial workers … to clean up Certis's portion of the lab in anticipation of an upcoming inspection," but that this was untrue. *Id.* ¶¶ B, C. Instead, "Ellman waited for the … employee to leave" and then "got to working clearing everything that belonged to Certis out of the

lab." *Id.* ¶¶ D, E. In addition to taking Certis' belongings, Ellman allegedly took a "tumor bank valued at $25 million" that Plaintiff alleges did not belong to Certis. *Id.* ¶¶ E, F.

### E.    Certis Terminates the Services Agreement and Plaintiff Sues in Retaliation

Less than two weeks after Ellman supposedly took the tumor bank, Plaintiff alleges that Defendants "execute[d] the final stage of their scheme by terminating the agreements between the two companies and cutting off all ties with [Plaintiff]." Compl. ¶ W. Thereafter, on July 6, 2018, Plaintiff filed suit against Certis and Ellman, alleging that Certis failed to pay Plaintiff sums owed under the Services Agreement. Plaintiff also alleges that Certis' use of the PDOX mark for the benefit of the PDOX, Inc. company that Plaintiff helped form infringes Plaintiff's trademark, and that Defendants' alleged fraudulent scheme to induce Plaintiff to turn over information relating to the PDOX method renders them liable for conversion, fraud, unjust enrichment, and in quantum meruit. Plaintiff does not allege it ever asked Defendants to cease using the PDOX mark.

## III.   LEGAL STANDARD

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(1) where, taking the material allegations in the complaint as true, federal jurisdiction is not apparent on the face of the complaint. *See Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004). "A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction." *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). Although a district court has supplemental jurisdiction over all claims which form part of the same case or controversy as any claim over which it has original jurisdiction, 28 U.S.C. § 1367(a), if the causes of action premised on federal law fail to state claims, claims arising under state law are

also subject to dismissal for lack of subject matter jurisdiction. *See, e.g.*, *Delacruz v. State Bar of Cal.*, 2015 U.S. Dist. LEXIS 133465, at \*6-7 (N.D. Cal. Sept. 29, 2015).

A motion to dismiss is proper under Federal Rule of Civil Procedure 12(b)(6) where the complaint fails to state a claim upon which relief can be granted. The complaint is construed in the light most favorable to the non-moving party and all material allegations in the complaint are taken to be true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). "This rule does not apply to a legal conclusion couched as a factual allegation…, allegations that contradict matters properly subject to judicial notice…, or material attached to or incorporated by reference into the complaint." *Jamison v. Bank of Am.*, 194 F. Supp. 3d 1022, 1027 (E.D. Cal. 2016) (internal citations and quotations omitted). A court's consideration of such matters "will not convert a motion to dismiss into a motion for summary judgment." *Id.*

To pass muster under Federal Rule of Civil Procedure Rule 8, a plaintiff's complaint must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1941 (2009). A complaint must be dismissed if the factual allegations do not show "more than a sheer possibility that a defendant has acted unlawfully." *Twombly*, 550 U.S. at 555 (facts must "raise a right to relief above the speculative level").

Further, pursuant to Federal Rule of Civil Procedure 9(b), a party "alleging fraud or mistake … must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Regardless of how a claim is labeled, all claims that are "grounded in fraud," "must be accompanied by the who, what, when, where and how of the misconduct charged." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106, 1107 (9th Cir. 2003) (internal quotations omitted).

## IV.   ARGUMENT

### A.    Plaintiff's Trademark Infringement and False Designation Claims Are Barred by the License Appearing on the Face of the Complaint

Plaintiff cannot maintain its first or second causes of action for trademark infringement and false designation of origin because Plaintiff admits facts demonstrating that it gave Certis a license to use the PDOX mark, which constitutes a complete defense to these claims.[2] Although the complaint does not reveal an express license, "[n]o formal granting of a license is necessary in order to give it effect. Any language used by the owner …, or any conduct on his part exhibited to another from which that other may properly infer that the owner consents to his use of the [intellectual property] in making or using it … upon which the other acts, constitutes a license" and a "complete defense" to an action for infringement. *De Forest Radio Tel. Co. v. United States*, 273 U.S. 236, 240, 241 (1927). Here, Plaintiff admits it agreed to create a new company with its mark right in the company name—PDOX, Inc.—"to commercialize the [PDOX] method," and retained a major ownership interest in the newly formed entity. Compl. ¶¶ J, L (3:18-20, 3:26-27).

Plaintiff then actively participated in PDOX, Inc.'s efforts to commercialize the PDOX method by entering and performing under the Services Agreement, *i.e.*, by using the PDOX method for PDOX, Inc.'s commercial benefit. Compl. Ex. 3; *see also* Compl. ¶ 35. The Services Agreement does not hide the fact that the PDOX mark was being used. "PDOX" is referenced thirteen times on page one: The services to be performed by Plaintiff are referred to as "PDOX Services," Compl. Ex. 3, ¶ 1; the lab space Plaintiff provided Defendants is defined as the "PDOX Space," *id.* ¶ 3; visitors to the PDOX Space are defined as "PDOX Visitors," *id.*

---

[2] "[T]he elements of infringement and unfair competition claims are essentially the same; the rulings stand or fall together." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1288 n.2 (9th Cir. 1992).

Since commercializing the PDOX method inherently required reliance on the PDOX mark, Plaintiff's confessed consent to the formation of PDOX, Inc. for the admitted purpose of commercializing the mark, and its active participation in that commercialization, is exactly the type of conduct that amounts to a license for Certis to use the PDOX mark and thus precludes Plaintiff's claims of infringement.

*De Forest* is instructive. The *De Forest* plaintiff sued the United States for patent infringement, alleging the United States had exceeded the scope of the pleaded license by licensing third parties to build technology on which plaintiff's patents read. Plaintiff further alleged that when the United States informed plaintiff of its intent to grant these third-party licenses, plaintiff informed the United States that "it would not do anything to interfere with the immediate manufacture" of the technology, but was "waiv[ing] none of its claims." 273 U.S. at 239. Thereafter, plaintiff assisted the United States in expediting the manufacture of the technology and gave the United States access to information needed to complete the same. *Id.* at 241.

In agreeing that the lower courts had properly dismissed plaintiff's complaint for infringement, the Supreme Court recognized that plaintiff's conduct was "clearly a consent to [the] manufacture and use" of plaintiff's technology, such that plaintiff had impliedly granted a license to the United States, despite plaintiff's purported reservation of rights. *Id.* Once that license was granted, "the relation between the parties … [was] contractual and not based on an unlawful invasion of the rights of the owner" of the patent, and the license was "a complete defense against a suit for infringement." *Id.* at 241-42.[3]

Similarly, in *Pogrebnoy v. Russian Newspaper Distribution, Inc.*, 289 F. Supp. 3d 1061 (C.D. Cal. 2017), the parties formed an oral contract in which (1) defendant

---

[3] The Supreme Court acknowledged that, in the specific circumstances at issue in *De Forest*, plaintiff might have been able to "sue or seek … an amicable settlement by payment of just compensation" for the license. 273 U.S. at 242. Here, as explained further *infra* Section IV.E, Plaintiff cannot assert a quasi-contractual claim to recover for the value of the license because the Services Agreement is a valid contract covering the same subject matter, and thus prohibits any quasi-contractual relief.

8

agreed to publish a Russian language newspaper in Los Angeles bearing plaintiff's mark, (2) plaintiff agreed to supply defendant with the files used for plaintiff's New York version of the same paper to facilitate the defendant's publication, and (3) the parties agreed to split the profits from defendant's distribution of the Los Angeles paper. 289 F. Supp. 3d at 1066. Despite the fact that the parties did not "discuss[] a license for any intellectual property rights," the court nonetheless found that plaintiff had granted defendant "an implied license to use the trademark[] at issue in this litigation." *Id.* at 1068. "The course of conduct between the parties, including [plaintiff's] sending of … files, which included the trademarks, and [defendant's] incorporation of those materials into the versions of the newspapers they published, [was] sufficient … to establish the existence of an implied license" allowing defendant to use the at-issue mark. *Id.*

As both *De Forest* and *Pogrebnoy* make clear, a plaintiff cannot actively participate in the commercialization of its intellectual property, allow a party to believe its use of the intellectual property is authorized, and then sue for infringement, claiming misuse of the same intellectual property. To the contrary, such conduct by a plaintiff—like Plaintiff's express consent to the formation of PDOX, Inc. and its participation in the commercialization of the PDOX method and mark— pleads a license on the face of the complaint that defeats the accusations of infringement. *See De Forest*, 273 U.S. at 240-42 (demurrer properly sustained); *Pogrebnoy*, 289 F. Supp. 3d at 1068; *see also Effects Assocs. v. Cohen*, 908 F.2d 555, 558-59 (9th Cir. 2002) (no copyright infringement because plaintiff had granted a license to defendant because plaintiff "created a work at defendant's request … intending that defendant copy and distribute it").

Because Plaintiff admits facts establishing a license that constitutes a "complete defense" to Plaintiff's accusations of infringement, *De Forest*, 273 U.S. at 242, dictates that leave to amend must be denied, as no amendment could remedy

9

these deficiencies without contradicting the instant complaint. *See, e.g.*, *Reddy v. Litton Indus.*, 912 F.2d 291, 296-97 (9th Cir. 1990) (affirming dismissal without leave to amend because "[i]t would not be possible for [plaintiff] to amend his complaint … without contradicting any of the allegations of his original complaint").

Plaintiff also is estopped under the naked licensing doctrine from suing Certis for infringement. "[T]rademark owners have a duty to control the quality of their trademarks." *FreecycleSunnyvale v. Freecycle Network*, 626 F.3d 509, 515 (9th Cir. 2010). "'Naked licensing' occurs when the licensor fails to exercise adequate quality control over the licensee." *Id.* Under the doctrine, a trademark owner's "'[f]ailure to exercise such control and supervision … may estop the trademark owner from challenging the use of the mark and business which the licensee has developed during the period of such unsupervised use.'" *Miller v. Glenn Miller Prods.*, 318 F. Supp. 2d 923, 945 & n.12 (C.D. Cal. 2004) ("the defense of estoppel is an off-shoot of the defense of abandonment or naked licensing") (quoting *Sheila's Shine Prods., Inc. v. Sheila Shine, Inc.*, 486 F.2d 114, 123-24 (5th Cir. 1973). Where a plaintiff has knowledge of the use of its trademark by another but fails object to that licensee's business activities, plaintiff fails to comply with its duty to "affirmatively supervise or control … [its] trademark rights," and is estopped from enforcing those trademark rights. *See Miller*, 318 F. Supp. 2d at 945-46 (defendant was estopped under the naked licensing doctrine where plaintiff "never objected to any of [defendant's] business activities … or in any way communicated with [defendant] regarding any qualitative aspect of [defendant's] operations"); *Freecycle*, 626 F.3d at 516-19 (affirming summary judgment for defendant that plaintiff had engaged in naked licensing where there was no express license agreement and plaintiff failed to exercise control of the quality of services defendant provided).

Yet, that is precisely what Plaintiff alleges here. Plaintiff's admitted agreement to help Certis commercialize PDOX and its participation therein by the Services

Agreement, demonstrates that Plaintiff was plainly on notice that Certis has been continually using the PDOX mark since the moment it was incorporated as PDOX, Inc. *Id.* ¶ J, Ex. 3. But the Services Agreement is devoid of any attempt to control the quality of services Certis is providing using the PDOX mark, and the complaint does not suggest otherwise. *See generally* Compl & Ex. 3. Accordingly, Plaintiff cannot now belatedly assert it has satisfied its "duty to control the quality" of Certis' use of the PDOX mark, and thus must be estopped under the naked license doctrine from asserting a claim for infringement against Certis.

As Plaintiff's failed infringement and false designation claims are the only bases for federal subject matter jurisdiction, the complaint should be dismissed in its entirety.[4] *See Delacruz*, 2015 U.S. Dist. LEXIS 133465, at *6-7.

**B.** **Plaintiff's State Law Tort and Quasi-Contract Claims Are Superseded by California's Uniform Trade Secrets Act**

Plaintiff seems to recognize that it cannot meet the high bar for pleading and maintaining a claim for misappropriation of trade secrets, and makes no attempt to do so. Instead, in an effort to circumvent California's policies and strict requirements for trade secret claims, Plaintiff attempts to shoe-horn theories of alleged theft and misuse of proprietary information into common law causes of action with lower pleading standards. Plaintiff cannot state a valid cause of action for misappropriation of trade secrets and should not be given leave to amend. Moreover, Plaintiff's attempts to circumvent California's Uniform Trade Secrets Act ("CUTSA") fail and

---

[4] Although Plaintiff purports to plead that subject matter jurisdiction exists under the diversity statute, Compl. ¶ 2, it also expressly pleads that Plaintiff "is a corporation organized and existing under the laws of the State of California," *id.* ¶ 4, that Certis has "its principal place of business [in] San Diego, California," *id.* ¶ 5, and that Ellman "resides in San Diego, California," *id.* ¶ 6. These allegations defeat the complete diversity necessary to invoke diversity jurisdiction. *See* 28 U.S.C. § 1332(c)(1) ("a corporation shall be deemed to be a citizen of every State … by which it has been incorporated and of the State … where it has its principal place of business"); *e.g.*, *Olson v. Wells Fargo Bank, N.A.*, 961 F. Supp. 2d 1149, 1157-58, 1164 (C.D. Cal. 2013) (granting motion to remand because complete diversity was absent).

its third, fourth, fifth, and seventh causes of action for conversion, fraud and deceit, unjust enrichment, and quantum meruit are superseded by the statute because each is premised on Certis purportedly stealing valuable information from Plaintiff or tricking Plaintiff into disclosing such information. *See, e.g.*, Compl. ¶¶ Q, T, 23, 27, 39, 43.

### 1. Plaintiff Cannot Assert a Viable Misappropriation of Trade Secrets Claim under CUTSA

Plaintiff should not be granted leave to amend to assert a misappropriation claim as any such claim would fail as a matter of law because Plaintiff cannot allege that Certis acquired any trade secret by "improper means." Cal. Civ. Code § 3426.1. Plaintiff alleges that it was supposedly "induce[d] … to give [Defendants] access" to confidential information "[i]n justifiable reliance on Defendants' statements and omissions." Compl. ¶¶ 23, 30. But a careful reading of the complaint reveals this is no more than a conclusory allegation that is contradicted by facts Plaintiff admits.

The Services Agreement in which Plaintiff agreed to employ the PDOX method and give PDOX, Inc. all "Deliverables," including those that contained confidential and proprietary information was signed in January 2017. *See generally* Compl. Ex. 3. But Plaintiff expressly pleads that "it wasn't until December 2017—two months before absconding with the tumor bank—that [Defendants] realized just how extremely valuable the tumor bank was," and decided to take it for themselves. Compl. ¶ R. Indeed, the only specific misrepresentation identified in the complaint did not occur until February 2018. *See id.* ¶¶ B, R, 29. Since Plaintiff admits that Defendants did not formulate any fraudulent intent until at least eleven months *after* Plaintiff voluntary disclosed information pursuant to the Services Agreement, no purported misrepresentation could have induced it to do so. Short of blatantly contradicting its admissions in the complaint, Plaintiff cannot amend to allege that the "improper means" Defendants allegedly employed in any way induced Plaintiff to

provide access to the disputed information, and so any prospective misappropriation claim would necessarily fail. *See, e.g.*, *Be In, Inc. v. Google Inc.*, 2013 U.S. Dist. LEXIS 147047, at *12 (N.D. Cal. Oct. 9, 2013) ("Without a showing of improper means, the … [complaint] fails to properly plead impropriety, an essential element of a[] [C]UTSA trade secret misappropriation claim."); *see Agency Solutions.Com, LLC v. TriZetto Grp., Inc.*, 819 F. Supp. 2d 1001, 1026 (E.D. Cal. 2011) ("there [was] no allegation that [defendant] obtained the Trade Secrets by improper means" where their agreement "authorized the parties to disclose to each other and to receive from each other trade secret information").

"Although leave to amend should be liberally granted, [an] amended complaint may only allege other facts consistent with the challenged pleading." *Reddy v. Litton Indus.*, 912 F.2d 291, 296-97 (9th Cir. 1990). Because Plaintiff specifically pleads that Defendants did not form any fraudulent intent or otherwise embark on any improper effort to take the disputed information from Plaintiff until December 2017, Compl. ¶ R, granting Plaintiff leave to amend would be futile, as the only way to remedy this flaw would be to contradict the allegations in the complaint. *See e.g.*, *id.* (affirming dismissal without leave to amend because "[i]t would not be possible for [plaintiff] to amend his complaint … without contradicting any of the allegations of his original complaint"); *Rodriguez v. Sony Computer Entm't Am., LLC*, 801 F.3d 1045, 1054 (9th Cir. 2015) (affirming dismissal with prejudice where amended complaint "completely contradict[ed] the earlier pleading").

### 2. Plaintiff's Attempts to Circumvent CUTSA Are Superseded and Invalid

CUTSA, which prohibits the "[a]cquistion of a trade secret … by improper means," Cal. Civ. Code §§ 3426.1(a), 3426(b)(1), supersedes all statutory and common-law claims "based on the same nucleus of facts as [a] misappropriation of trade secrets claim for relief." *K.C. Multimedia, Inc. v. Bank of Am. Tech. &*

*Operations, Inc.*, 171 Cal. App. 4th 939, 958 (2009); *see Silvaco Data Sys. v. Intel Corp.*, 184 Cal. App. 4th 210, 236 (2010) ("CUTSA provides the exclusive remedy for conduct falling within its terms"), *disapproved on other grounds as stated in Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011); *see also* Cal. Civ. Code § 3426.7(b). Among the "improper means" that CUTSA prohibits are the use of "theft, bribery, [or] misrepresentation" to acquire another's secrets. Cal. Civ. Code § 3426.1(a).

It is irrelevant that Plaintiff pleads its causes of action without specifically labeling the stolen information as "trade secrets." Even claims based on the misappropriation of information that does not meet the statutory definition of a "trade secret" are superseded by CUTSA. "Information that does not fit th[e] definition [of a trade secret], and is not otherwise made property by some provision of positive law, belongs to no one, and cannot be converted or stolen." *Silvaco*, 184 Cal. App. 4th at 239 n.22 ("We emphatically reject the … suggestion that [CUTSA] was not intended to preempt common law conversion claims based on the taking of information that though not a trade secret, was nonetheless of value to the claimant.").[5] "If the basis of the alleged property right is in essence that the information is 'not…generally known to the public,'… then the claim is sufficiently close to a trade secret that it should be superseded notwithstanding the fact that the information fails to meet the definition of a trade secret." *Sunpower Corp. v. SolarCity Corp.*, 2012 U.S. Dist. LEXIS 176284, at *17 (N.D. Cal. Dec. 11, 2012); *see TMC Aerospace, Inc. v. Elbit Sys. of Am. LLC*, 2016 U.S. Dist. LEXIS 182652, at *26 (C.D. Cal. Jan. 29, 2016) ("[e]ven proprietary information that does not constitute a trade secret may fall within CUTSA's ambit where the basis for the property interest is rooted in the information's private nature"). "To permit otherwise would allow plaintiffs to avoid the preclusive effect of CUTSA (and thereby plead potentially more favorable common-law claims) by

---

[5] Courts routinely refer to CUTSA's superseding effects as "preemption."

simply failing to allege … the elements" of trade secret misappropriation. *Sunpower*, 2012 U.S. Dist. LEXIS 176284, at *17.

Plaintiff's inability to adequately plead a claim under CUTSA in no way undermines CUTSA's superseding effect on Plaintiff's other causes of action. "A statute may supersede other causes of action even though it does not itself provide relief on a particular set of facts." *See Silvaco*, 184 Cal. App. 4th at 237 (tort claims were superseded by CUTSA even though CUTSA claim was dismissed, and rejecting argument that "no cause of action can ever be barred by statutory supersession unless the plaintiff has a viable claim under the superseding statute").

### a. Plaintiff's Conversion Claim Is Superseded by CUTSA

Plaintiff's third cause of action for conversion purportedly is based on Defendants employing a "fraudulent scheme to induce [Plaintiff] to give them access to all of [Plaintiff's] personal property, including its tumor bank of patient samples." Compl. ¶ 23. [6] Plaintiff additionally pleads that the tumor bank is an "extremely valuable … source of research material for pharmaceutical and biotech companies" supposedly "valued at more than $25 million." *Id.* ¶ F, Q. In other words, Plaintiff alleges that the value of the purportedly stolen tumor bank is that it contains confidential information about the results of its tumor research, and then seeks to recover the value of the research supposedly contained therein. [7] These allegations are superseded by CUTSA.

---

[6] Other than a vague reference to "personal property," Plaintiffs do not allege any property besides the tumor bank as the basis for this claim. Compl. ¶¶ 23-25. In any event, the allegation that Defendants took other property belonging to Plaintiff is inconsistent with Plaintiff's allegation that Defendants "clear[ed] everything *that belonged to Certis* out of the lab," and that the only item that did not supposedly belong to Certis was the tumor bank. *Id.* ¶¶ E (emphasis added).

[7] It would be implausible for Plaintiff to allege that mouse tissue itself or the containers holding the samples, stripped of the tumor information, were worth $25 million. *See Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.")

*TMC Aerospace* is on point. There, plaintiff argued that its conversion claim was not superseded by CUTSA because the claim was premised on the theft of tangible items, rather than intangible information. 2016 U.S. Dist. LEXIS 182652, at \*26-27. Specifically, plaintiff alleged that defendant had converted "proprietary manufacturing equipment developed for use in manufacturing [plaintiff's] patented … systems." *Id.* at \*23. In holding that the conversion claim was nonetheless superseded by CUTSA, the court explained that plaintiff "had not articulated any other basis for its property interest in the equipment other than that such equipment" was proprietary and confidential. *Id.* at \*27-28. Accordingly, plaintiff had not identified a property interest outside of trade secrets law that could support its conversion claim, so the claim was superseded. *Id.*

This identical flaw appears on the face of the Complaint here. The only value Plaintiff identifies in the tumor bank is as a "source of research material." Compl. ¶ Q. But research is exactly the type of information CUTSA protects. *See, e.g.*, *Triton Eng'g v. Crane Co.*, 2013 U.S. Dist. LEXIS 198210, at \*8-9 (C.D. Cal. Apr. 25, 2013) ("Plaintiff sufficiently alleges that Defendants misappropriated its research."). Thus, Plaintiff's conversion claim, which alleges that Defendants employed a "fraudulent scheme" to obtain such information, Compl. ¶ 23, only "concern[s] the way in which the alleged trade secret information"—*i.e.*, the research contained within the tumor bank—"was misappropriated" and is thus superseded, *Triton*, 2013 U.S. Dist. LEXIS 198210, at \*10-11 (dismissing fraud and unfair competition claims). *See, e.g.*, *TMC Aerospace*, *supra*, 2016 U.S. Dist. LEXIS 182652, at \*27-28; *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 973 (N.D. Ill. 2000) (conversion claim based on "the taking of actual computers, disks, and paper" was superseded by Illinois' Uniform Trade Secrets Act because "these physical items have little value apart from the information contained therein").

### b. Plaintiff's Fraud and Deceit Claim Is Superseded by CUTSA

Plaintiff's fourth cause of action for fraud and deceit is purportedly based on Defendants "commenc[ing] a fraudulent plan and a continuing course of conduct aimed at inducing [Plaintiff] to provide tumor samples, concordance studies, know-how, and other valuable intellectual and physical property and services … for the purpose of using those properties and services to create and market [Certis'] own products and services." Compl. ¶ 27. Plaintiffs allege that they were induced to "provide[] goods and services to Certis" in reliance on supposed "multiple false and misleading statements of material facts," or omission of the same. *Id.* ¶¶ 26-30. Yet again, Plaintiff improperly seeks to plead a common law state claim arising from the type of fraudulent conduct that falls within the ambit of CUTSA supersession. *See* Cal. Civ. Code § 3426.1(a) (acquisition of trade secret by improper means includes by misrepresentation).

*Top Agent Network, Inc. v. Zillow, Inc.*, 2015 U.S. Dist. LEXIS 176837 (N.D. Cal. Aug. 6, 2015) is on all-fours. There, the plaintiff alleged that defendant "purposefully misrepresented its intentions and omitted material information as part of a campaign to obtain confidential information from [plaintiff]." *Id.* at *12. Although the court acknowledged that the allegations "could be read to concern non-trade secret information," this was not sufficient to save the claim. *Id.* at *13. The plaintiff's reliance on alleged "false assurances" involved the same "common nucleus of fact" that supported a claim for misappropriation, and thus the claim was superseded. *Id.* This was true, even though the claim was supposedly based on non-trade secret information: "[Plaintiff] cannot raise a fraud claim … separate from its CUTSA claim merely because information … does not meet CUTSA's definition of a 'trade secret.' Permitting it to do so would allow [plaintiff] to opt for alternate

pleading requirements with less burdensome standards of proof, entirely undermining CUTSA's preclusive effect." *Id.* at \*13-14.

Yet that is precisely what Plaintiff's fraud and deceit claim seeks to do here. Just like in *Zillow*, Plaintiff cannot artfully avoid classifying the information Defendants purportedly stole as a trade secret in the hopes of avoiding CUTSA supersession. To the contrary, because CUTSA expressly encompasses the exact type of conduct on which Plaintiff's fraud and deceit claim is based, the claim is preempted. *See id.* at \*15 (dismissing fraud and unfair competitions claims without leave to amend); *Triton, supra*, 2013 U.S. Dist. LEXIS 198210, at \*10-11 (dismissing fraud claim with prejudice because it "simply concern[ed] the way in which the alleged trade secret information was misappropriated"); *Swarmify, Inc. v. Cloudfare, Inc.*, 2018 U.S. Dist. LEXIS 57035, at \*12 (N.D. Cal. Apr. 3, 2018) (dismissing fraudulent inducement claim because allegations that defendant induced plaintiff to reveal its trade secrets by false representation "plainly describe trade secret misappropriation").

c.      **Plaintiff's Quasi-Contract Claims for Unjust Enrichment and Quantum Meruit Are Superseded by CUTSA**

Plaintiff's attempt to plead quasi-contractual theories of recovery also are superseded because they are based on the same allegations that "Certis has improperly obtained valuable intellectual and physical property from [Plaintiff], including but not limited to the tumor bank, the concordance studies data, animal models, tools, know-how, intellectual property rights, information and processes." Compl. ¶ 39 (unjust enrichment); *see id.* ¶¶ 43-44 (Plaintiff provided "services … including but not limited to the performance of concordance studies and analysis involving thousands of mouse models" in reliance on Certis' false representations to compensate Plaintiff for the same.) (quantum meruit).

Just as with Plaintiff's conversion and fraud and deceit claims, these quasi-contractual theories of liability are equally unavailable to Plaintiff because the same conduct falls within the type of conduct covered by CUTSA. *See, e.g.*, *SOAProjects, Inc. v. SCM Microsystems, Inc.*, 2010 U.S. Dist. LEXIS 133596, at *27 (N.D. Cal. Dec. 7, 2010) (dismissing unjust enrichment claim without leave to amend because "attempt to use unjust enrichment to recover for [defendant's] alleged misappropriation of … trade secrets" was superseded by CUTSA; *Louis v. Nailtiques Cosmetic Corp.*, 423 Fed. Appx. 711, 713 (9th Cir. Mar. 22, 2011) (plaintiff's "common count and quantum meruit claims are preempted by [CUTSA]"); *Digital Envoy, Inc. v. Google*, 370 F. Supp. 2d 1025, 1035 (N.D. Cal. 2005) (CUTSA superseded unjust enrichment claim since it was "based on the same nucleus of facts" as a misappropriation claim).

### C. Plaintiff's Fraud Claim Fails To Meet the Pleading Requirements of Rule 9(b) or Rule 8

The fraud claim also fails because Plaintiff comes nowhere close to meeting the heightened pleading standard imposed on fraud claims under Rule 9(b). Rather than pleading the required "who, what, when, where and how of the misconduct charged," *Vess*, 317 F.3d at 1106, Plaintiff vaguely alleges that "Defendants made multiple false and misleading statements of material facts, concealed true facts they were bound to disclose, and omitted to state material facts," Compl. ¶ 28. This level of detail falls well short of the specificity required by Rule 9(b). *Vess*, 317 F.3d at 1106; *see, e.g.*, *Delino v. Platinum Cmty. Bank*, 628 F. Supp. 2d 1226, 1236 (S.D. Cal. 2009) (allegation that "Defendants made various misrepresentations of material fact" was "insufficient to meet the heightened pleading standard of Rule 9(b)"); *Hansen v. Scram of Cal., Inc.*, 2017 U.S. Dist. LEXIS 65341, at *17 (C.D. Cal. Apr. 28, 2017) (allegation that "defendants made various misrepresentations" without alleging "who made such representations, when the misrepresentations were made, or

how they were communicated" failed to satisfy Rule 9(b)); *Pushkin v. Nussbaum*, 2018 U.S. Dist. LEXIS 9368, at *7 (D.N.J. Jan. 19, 2018) (allegation that "various defendants … made 'multiple misrepresentations on multiple occasions' or concealed the full nature and extend of [plaintiff's] injuries" insufficient under Rule 9(b)).

Because Plaintiff's conversion cause of action also purports to rely on a "fraudulent scheme," it also sounds in fraud, and thus also fails to meet the heightened pleading standard of Rule 9(b). *Compare e.g.*, Compl. ¶ 23 ("Defendants willfully interfered through a fraudulent scheme….") *with Julian Bakery, Inc. v. Healthsource Int'l, Inc.*, 2018 U.S. Dist. LEXIS 52248, at *11-12 (S.D. Cal. Mar. 28, 2018) ("Rule 9(b) will apply to Plaintiff's state law claims for Unfair Competition False Advertising, Fraud, and Intentional Interference as they rely on the same allegations, and thus are similarly grounded in fraud."); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-27 (9th Cir. 2009) (applying Rule 9(b) to claim for false advertising); *Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. Jan. 6, 2017) (applying Rule 9(b) to unjust enrichment claim based on fraud); *Maksoud v. Guelton*, 2017 U.S. Dist. LEXIS 89213, at *6-7 (S.D. Cal. June 9, 2017) (same).

Even if Plaintiff had described its fraud-based claims with sufficient specificity, the underlying theory is implausible and cannot be amended to state plausible claims under Rule 8. "The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or scienter); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Lazar v. Superior Court*, 12 Cal. 4th 631, 638 (1996).

Plaintiff purports to allege that it was induced to provide Certis with "tumor samples, concordance studies, know-how, and other valuable intellectual and physical

property" in supposed reliance on misrepresentations and/or omissions.[8] Compl. ¶¶ 27-30. But Plaintiff also alleges that Defendants did not form any fraudulent intent until they learned of the sale of a competitor in the tumor bank business in December 2017—nearly a year *after* Plaintiff signed the Services Agreement agreeing to provide that same information. *Id.* ¶ R, Ex. 3. And Plaintiff does not allege that any misrepresentation occurred until February 2018. *See id.* ¶¶ B, R, 29. Thus, taking Plaintiff's allegations as true, Plaintiff has negated at least two required elements of a claim for fraud: Certis' "intent to defraud" and Plaintiff's own "justifiable reliance." *Lazar*, 12 Cal. 4th at 638. Certis did not "inten[d] to defraud" Plaintiff before ever forming a fraudulent intent, and Plaintiff cannot have "justifiabl[y] reli[ed]" on misrepresentations made after the action supposedly taken in reliance.

### D. The Services Agreement Attached To and Incorporated by Reference In the Complaint Precludes Plaintiff's Conversion Claim

Plaintiff's third cause of action purports to rely on Certis' supposed theft of the tumor bank. This claim makes no sense and is in fact expressly belied by the Services Agreement incorporated by reference into the complaint. Sections 6.1 and 6.2 of the Services Agreement declare that all "Deliverables," including any "materials, data, [or] work product … generated or derived by [Plaintiff] in connection" with performing under the Services Agreement belong to Certis. Compl. Ex. 3 at §§ 6.1, 6.2. And Exhibit A to the Services Agreement declares that part of Plaintiff's services will be to create a tumor bank of the patients treated. *See id.* at Ex. A (services include "tumor banking services which will involve cryopreservation of one tumor per patient receiving PDOX Services"). Accordingly, despite Plaintiff's conclusory allegation that Certis took property belonging to Plaintiff, the incorporated contract

---

[8] Notably, Plaintiff admits that the concordance studies were performed pursuant to requests by Certis under the Services Agreement. *See* Compl. ¶ S (Defendants "demanded extensive and labor-intensive concordance studies … though they never paid for the studies.") Plaintiff's remedy for any such supposed failure to pay lies in contract law.

establishes that Plaintiff agreed such "[d]eliverable" was Certis' property, and thus the conversion claim must be dismissed. *See, e.g.*, *Bijan Nikoopour v. Ocwen Loan Serv., LLC*, 2018 U.S. Dist. LEXIS 100828, at *10-11 (S.D. Cal. June 28, 2018) (dismissing breach of contract claim because allegations were contradicted by terms of agreement incorporated by reference into complaint); *Crafty Prods. v. Fuqing Sanxing Crafts Co.*, 2016 U.S. Dist. LEXIS 136219, at *14-16 (S.D. Cal. Sept. 29, 2016) (dismissing copyright infringement claim because plaintiff's claims of ownership of copyright were contradicted by agreement attached to complaint).

### E. The Services Agreement Precludes Plaintiff's Claims for Unjust Enrichment and Quantum Meruit

The existence of a written contract between Plaintiff and Certis is fatal to Plaintiff's attempt to recover under the quasi-contractual theories alleged in its sixth and seventh causes of action, unjust enrichment and quantum meruit. Plaintiff cannot simply cast off its decision to accept "at least $112,500" for its performance under the Services Agreement, Compl. ¶ 36-37, because it now believes it should have contracted to be paid more, *see id.* ¶ 44 (alleging services performed were worth "at least $3 million").

As an initial matter, these two claims are entirely duplicative of one another. "[U]njust enrichment is not a cause of action." *Jogani v. Superior Court*, 165 Cal. App. 4th 901, 911 (2008). Instead, it is a remedy which seeks the same equitable compensation as Plaintiff's purported quantum meruit claim. *See, e.g.*, *id.* ("The only theory of recovery based on the general principle of unjust enrichment … is the quantum meruit claim. [Plaintiff's] attempt to plead a separate cause of action entitled 'unjust enrichment' adds nothing.")

In any event, in alleging both of these claims, Plaintiff plainly relies on its performance, and Certis' failure to pay, pursuant to the Services Agreement. Compl. ¶ 40 ("Certis has obtained this intellectual and physical property at [Plaintiff's]

22

expense and efforts, *and as a result of [Plaintiff's] good faith performance under the Services Agreement*.") (unjust enrichment) (emphasis added); *id.* ¶ 43-44 ("Certis requested services from [Plaintiff]… Certis agreed to pay [Plaintiff] for those services… [Plaintiff] provided the services … in reliance upon Certis's promises to compensate.") (quantum meruit).  But "it is well settled that an action based on an implied-in-fact or quasi-contract cannot lie where there exists between the parties a valid express contract covering the same subject matter." *Lance Camper Mfg. Corp. v. Republic Indem. Co.*, 44 Cal. App. 4th 194, 203 (1996).

The complaint does not suggest that the Services Agreement is somehow unenforceable. Indeed, it seeks to enforce it. Accordingly, Plaintiff cannot seek to recover in quasi-contract for the identical services for which they claim they are owed compensation under the parties' valid Services Agreement. *See id.* (plaintiff "must allege that the express contract is void or rescinded to proceed with its quasi-contract claim"); *Paracor Fin., Inc. v. GE Capital Corp.*, 96 F.3d 1151 (9th Cir. 1996) ("Under both California and New York law, unjust enrichment is an action in quasi-contract, which does not lie when an enforceable, binding agreement exists defining the rights of the parties.") (affirming summary judgment); *e.g.*, *Hedging Concepts, Inc. v. First Alliance Mortg. Co.*, 41 Cal. App. 4th 1410, 1419-20 (1996) (reversing quantum meruit award because the trial court found and express contract and thus "violated the rule that equitable entitlement to quantum meruit payment is not implied where the parties have actual contract terms covering payment"); *Solano v. Am.'s Serv. Co.*, 2011 U.S. Dist. LEXIS 110132, at *24-25 (E.D. Cal. Sept. 26, 2011) (dismissing unjust enrichment claim because "[n]one of Plaintiffs' allegations plausibly suggest that valid contracts did not exist between the parties"); *Smith v. Aurora Loan Servs.*, 2010 U.S. Dist. LEXIS 92687, at *12-15 (same).

# V. CONCLUSION

For the foregoing reasons, Plaintiff's complaint should be dismissed without leave to amend.

Dated: August 15, 2018

MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

By *s/Daniel T. Pascucci*
   Daniel T. Pascucci
   Heather J. Silver

   Attorneys for Defendants
   PDOX, INC., dba CERTIS
   ONCOLOGY SOLUTIONS
   and PETER ELLMAN

# **CERTIFICATE OF SERVICE**

I, the undersigned, certify and declare that I am over the age of 18 years, employed in the County of San Diego, State of California, and am not a party to the above-entitled action.

On August 15, 2018, I filed a copy of the foregoing document by electronically filing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all CM/ECF registered users.

Executed on August 15, 2018, at San Diego, California.

*s/Daniel T. Pascucci*
Daniel T. Pascucci